UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Central Illinois Carpenters Health & Welfare Trust Fund;  Mid-Central Illinois District Council of Carpenters Apprenticeship Fund; Central Illinois Carpenters Annuity Fund;  Carpenters Fringe Benefit Fund;  Carpenters Local 63; and Carpenters Local 644,<br>    Plaintiffs<br><br>  v.<br><br>S&S Fashion Floors, Inc., and Helen M. Struben,<br>    Defendants | Case No. 05-1094 |

**ORDER**
**and OPINION**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me.  Now before the Court is Defendant Helen M. Struben's Motion for Summary Judgment on Count II [#53].  The motion is fully briefed, and I have carefully considered all of the submissions of the parties.  As explained herein, the motion is denied.

**JURISDICTION**

This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1145.  This Court therefore has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331.

**BACKGROUND**

S&S Fashion Floors Inc. is a dissolved Illinois corporation that was party to various collective bargaining agreements, participation agreements and other trust agreements with the unions and employee benefit funds that are the plaintiffs in this case. Pursuant to those agreements, S&S was contractually obligated to make contributions to various employee benefit funds. For the sake of convenience, the Plaintiff unions and benefit funds are referred to cumulatively as the "Funds" in this Opinion.

Article IV (p.4) of the Central Illinois Carpenters Health & Welfare Trust Fund provides in pertinent part that the Trustees "shall have the power to demand, collect, sue for and receive (i) Employer contributions, ii) Employee contributions. . ." This same document provides that the Trustees administer, control and manage the operation and administration of the Fund, and that no "Employer . . . or any other persons, partnership, corporation or association shall have any right, title, or interest in or to the Fund or any part thereof." Article X, Sections 2 and 3, page 10.

In the Agreement and Declaration of Trust of Carpenters Retirement Savings Fund of Illinois, it is stated that the "control, management and administration" of the Plan is "in the Trustees appointed to act hereunder, who are hereby designated as the "Named Fiduciaries. . ." Part III, Article I, Section 1.

At all pertinent times, the President of S&S was Helen Struben. Although S&S continued to withhold some amount for Fund contributions from employee paychecks, the withheld amounts were not paid to the Funds. The Funds performed an audit showing that S&S owed the plans over $30,000 in delinquent contributions. Struben disputed the findings of the audit, stating that it did not deduct "the amount of contributions Plaintiffs claim in their

audit is due to them from the wages of its workers." (Struben's Motion, Statement of Undisputed facts, ¶ 24). In other words, while disputing the precise amount it deducted, S&S has not disputed that it deducted some amount from wages paid and that the amount deducted was payable to the Funds.

During Struben's winding down of the company's affairs, she liquidated the company's assets[1]. Although the dispute about the audit remained unresolved, she used the liquidated assets to pay creditors other than the Funds, and she distributed some of the assets to herself and her son. The Funds were not paid.

The Funds then filed this lawsuit. In the three count Second Amended Complaint, Plaintiffs allege three separate violations of ERISA. In Count I, they claim that S&S failed to make contributions required by various collective bargaining agreements and participation agreements, in violation of ERISA. In Count II, the Plaintiffs assert that Helen M. Struben was an ERISA fiduciary with respect to plan assets and that she breached her fiduciary duties by paying corporate debts instead of the amounts due to the Funds. In Count III, Plaintiffs assert that Struben was an alter ego of S&S and is therefore personally liable for the company's debts.

Struben has filed a motion for summary judgment as to Count II only, arguing that she was not a fiduciary of the Funds, and that she could not, therefore, have breached any duty to them.

---

[1] Struben characterizes these assets as "minimal." The Funds object to that characterization as inaccurate and vague. Based on the discussion below, this is not material to resolution of the question presented by the pending motion, namely whether Struben was a fiduciary with respect to the Funds.

3

**DISCUSSION**

An ERISA claim for breach of fiduciary duty requires pleading and proof that (1) defendant is a fiduciary; (2) defendant acted with respect to the plan in some way covered by the statute; and (3) some fiduciary duty imposed upon the defendant was breached by that act (4) causing damage or loss to the Plan. Jenkins v. Yager, 444 F.3d 916, 924 (7th Cir. 2006). The issue raised by the pending motion relates to the first element, namely whether Helen Struben was a fiduciary under ERISA.

The term "fiduciary" under ERISA has consistently been given a broad meaning. See, Baker v. Kingsley, 387 F.3d 649, 663-664 (7th Cir. 2004) ("liberal standard for fiduciary status"); Mutual Life Ins. Co. of N.Y. v. Yampol, 840 F.2d 421, 425 (7th Cir.1988) (noting "this court's consistently broad reading" of the definition of an ERISA fiduciary).

Obviously, a claim for breach of fiduciary duty under ERISA is only valid against a "fiduciary." Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 854 (7th Cir.1997). A person is a fiduciary with respect to an ERISA plan, "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). Because a person is deemed a fiduciary only "to the extent" she exercises discretionary authority, "a person may be an ERISA fiduciary for some purposes, but not for others." Baker, 387 F.3d at 660, quoting Plumb, 124 F.3d at 854. "In assessing whether a person can be held liable for breach of fiduciary duty, a court must ask whether that person is a fiduciary with respect to the particular activity at issue." Baker, 387 F.3d at 660, quoting Plumb, 124 F.3d at 854.

Determining whether a person is a fiduciary is not dependent on whether that person has been formally designated as such. Instead, a fiduciary should be viewed "in functional terms of control and authority over the plan." Ruiz v. Continental Cas. Co., 400 F.3d 986, 990 (7th Cir. 2005), citing Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993). Key to this functional approach is an evaluation of the conduct of the alleged fiduciary vis-a-vis a plan's assets. ERISA itself does not define what constitutes an asset of an ERISA fund. The Department of Labor has instructed that:

> the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. In general, the assets of a welfare plan would include any property, tangible or intangible, in which the plan has a beneficial ownership interest."

Department of Labor Advisory Opinion No. 93-14A (May 5, 1993), 1993 WL 188473, at *4, quoted in Navarre v. Luna, 406 F.3d 1192, 1199 (10th Cir. 2005). A definition of "plan assets" is also found in a regulation from the Department of Labor, which provides:

> the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3-102.

The Seventh Circuit has not decided whether unpaid contributions to an ERISA fund constitute plan assets, nor has it determined whether an employer who makes (or is obligated to make) regular contributions to an ERISA employee benefit plan is acting in a fiduciary capacity when it does so or fails to do so. Variations on these issues have, however, been resolved by several other Courts. Upon first reading of these cases, discussed below, it appears that there is significant disagreement. But much of the

5

inconsistency between and among these cases stems from factual differences. Some of the cases deal with situations in which an employer has actually withheld amounts from employee wages but has failed to pay over those amounts to union funds. Other cases deal with the situation in which the employer stops taking any deductions from wages paid to employees and hence stops paying the union funds. In the case before this Court, S&S continued to deduct at least some amount that was payable to the Funds, but did not pay that amount to the Funds.

Struben relies almost exclusively on Navarre v. Luna, 406 F.3d 1192 (10th Cir. 2005). The Luna court found that the plan asset was not the amount of contributions that was due to the plan but rather was the right to collect the amount due under governing agreements. In that case, however, the employer had never taken any deductions from employee wages. The Court's application of the law to those facts, therefore, cannot be directly imported into this case, where deductions were actually taken. In fact, the Luna court noted precisely that:

> Our holding that employers who fail to pay contractually-owed contributions to a plan are not, by virtue of that fact alone, fiduciaries, must be distinguished from the situation where an employer has control over funds that were withheld from employees' pay checks. Where the issue is not *employer* contributions (as here), but rather *employee* contributions held by the employer, courts will recognize that the employer meets ERISA's statutory definition of a fiduciary.

Luna, 406 F.3d at 1206 n.13.

While Luna may be one of the most thorough discussions of this issue, it is far from the only one. In Phelps v. C.T. Enters., Inc., 394 F.3d 213, 219 (4th Cir. 2005), the facts more closely approached the facts now before this Court. The employer had paid funds to the plan that exceeded the amount that had been withheld from employees. However, the

records also showed that the withheld amounts were never segregated from general funds, that the employer only intermittently paid anything to the plan, and that the amount paid to the plan varied each time (although the amount withheld from employees did not vary and was regularly withheld).  Relying on the Department of Labor regulation quoted above, the Court concluded that where an employer is entrusted with employee deductions from wages due to be paid to a plan, the employer is acting as an ERISA fiduciary when it exercises the discretion whether to do so.  The Phelps Court then denied summary judgment, finding a dispute whether or not the employer had paid over all employee deductions, even though the withheld amounts were only $850 out of $300,000 that were paid to the plan.  Accord, Bannistor v. Ullman, 287 F.3d 394 (5th Cir. 2002);  In re O'Quinn, – B.R. –, 2007 Wl 2298240 (Bkrtcy. M.D.N.C. 2007); Zawlocki v. Rama Tech LLC, – F.Supp. 2d –, 2005 WL 3991756 (E.D. Mich.2005);  Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Virginia, 867 F. Supp. 398, 405 (E.D. Va. 1994); Professional Helicopter Pilots Ass'n v. Denison, 804 F. Supp. 1447 (M.D. Ala. 1992);  Pension Benefit Guar. Corp. v. Solmsen, 671 F. Supp. 938 (E.D.N.Y.1987).  See also, In re Popovich, 359 B.R. 799 (Bkrtcy. D. Colo. 2006) (distinguishing fiduciary obligation to pay *employee* contributions withheld by employer from an employer's contractual obligations to pay *employer* contributions to plan).

There are other formulations to determine when amounts due to a plan become assets of the plan. For example, a number of courts have held that an employer's obligation to pay contributions to a plan arises when wages are paid to union members, not when those contributions have been "banked" by the plan.  The amount due pursuant to those contractual obligations would be included in an audit as an asset of the plan;  such amounts are therefore assets of the plan for purposes of ERISA.  See, Chicago Dist. Council of

Carpenters Pension Fund v. Angulo, 150 F. Supp 2d 976, 978 (N.D. Ill.2001)(common sense meaning as well as plan language means that receivables are included in "plan assets") ; U.S. v. LaBarbara, 129 F.3d 81 (2d Cir. 1997) (common sense meaning of "plan assets" includes the contribution receivables). Were this approach adopted, the amounts owed by S&S to the plan would be plan assets regardless of whether they had actually been withheld.

Other courts have held that fiduciary status is conferred upon a person who has the discretion whether to pay contractually-owed monies to a plan, without regard to whether those contributions have been withdrawn from employee pay. See, Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc., 906 F.2d 1371 (9th Cir. 1990); Bd. of Trustees v. J.R.D Mec. Servs. Inc., 99 F.Supp. 2d 1115, 1122 (C.D. Cal. 1999)(citing cases). This approach would not affect the outcome in the case now before this Court.

It is true that a few courts have held that, until contributions are actually paid to the plan, the monies are not plan assets at all. See, Local Union 2134 v. Powhatan Fuel Inc., 828 F.2d 710 (11th Cir. 1987); Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223,1234 (9th Cir. 2000). Luna and others have properly rejected this narrow definition of "plan assets".

Other courts have relied on specific language from plan documents, collective bargaining agreements, or other governing trust documents to override these general principles. See, ITPE Pension Fund v. Hall, 334 F.3d 1011, 1014 (11th Cir.2003)(plan language overrides general rule that unpaid employer contributions are not assets of ERISA plan); Angulo, 150 F. Supp 2d at 978 (contract language implicitly led to holding that

employer contributions were plan assets); Connors v. Paybra Mining Co., 807 F. Supp. 1242, 1246 (S.D.W. Va. 1992)(based on contractual language, company officers and directors were fiduciaries when they made "personal, conscious choices" to use withheld employee contributions to cover company expenses); Trustees of the Nat'l Elevator Indus. Pension v. Lutyk, 140 F. Supp 2d 407, 411 (E.D. Pa.2001) (unpaid contributions found to be plan assets, based on language in governing that "Trust Fund shall consist of ... such sums of money as shall be paid to [the plan] by the Employers ...."); Motion Picture Laboratory Technicians and Film Editors Local 780 Pension Fund v. Astro Color Laboratories, Inc., No. 01-2096, 2002 WL 596364, *2, April 17, 2002 (N.D. Ill.)(based on plan language, unpaid employer contributions not plan assets).  See, Luna, 406 F.3d at 1200-01(collective bargaining agreement and other trust documents were "at best ambiguous regarding the point when unpaid contributions become plan assets.")

While the governing documents that have been cited to the Court make it clear that Struben was not an official, appointed fiduciary, those documents do not resolve the question whether Struben was a functional fiduciary.  Nor have the parties directed the Court to any language contained in those documents that might provide guidance in determining whether unpaid contributions constitute assets of the Funds.

In the absence of contractual language that might persuade me otherwise in this case, I find persuasive those cases holding that as a general rule, assets of the Funds include all unpaid contributions, actually withheld from wages by the employer, to which the Funds are legally entitled by the governing documents.

This conclusion is consistent with the Department of Labor's interpretation of the statute, as quoted above, that "plan assets" include amounts that have been withheld by

the employer from employee pay but not paid over to the plan. In this case, there is no dispute that some amounts were withheld from employee pay but never paid over to the Funds. Those amounts were clearly plan assets.

The language in the agreement that no employer shall have any "right, title, or interest" in or to the Fund is not to the contrary. Fiduciary obligations are not rights, titles, or interests in the Fund. In fact, the fiduciary obligations - to turn over withheld amounts to the Funds - are antithetical to any claim of title in those amounts. As those fiduciary obligations arise, any claim of right or title to the employee contributions actually withheld fails.

I do not believe, however, that amounts due and owing to the Funds that were never withheld by the employer rise to the level of plan assets. As noted by the Luna Court, - traditional fiduciary responsibilities, such as buying, selling, lending, borrowing, paying income, and the like, bear little if any resemblance to the employer's decision whether to take contractually-mandated deductions from employee wages and then pay them to the plan. 406 F.3d at 1204.

Under trust law, agreements between employers and employees to deduct amounts from wages create only a debtor/creditor relationship, and the relationship of debtor to creditor is not a fiduciary relationship.

> A trust arises as to the amounts deducted as soon as they are either set aside by the employer for the employee's purposes or paid over to another person for those purposes. Until then, the employer's obligation is merely a debt, with the obligee holding a chose in action in trust. The claim that is held in the trust estate is like the claims of other general creditors of the employer except to the extent of any preference that may be conferred by statute or other rules of law or equity, preferences that are not peculiar to trust law.

Restatement (Third) of Trusts § 5(i) and comment k (2001).

I conclude, based on the discussion above, that amounts actually withheld from employee wages by S&S do as a matter of law constitute plan assets, but that amounts never withheld, although due and owing under governing agreements, are merely contractual obligations.  To the extent that S&S actually withheld some amount from its employees' wages, those amounts were plan assets.

Once the withholdings have been identified as plan assets, then Struben's control over the management, use, and disposition of those assets must be examined.  In LoPresti v. Terwillinger, 126 F.3d 34 (2d Cir. 1997), the employer continued to withdraw plan contributions from employee paychecks, but rather than paying the contributions over to the funds, they were added to the corporation's general fund and used to pay general corporate debt.  The parties did not dispute that the collected contributions were plan assets.  The dispute related to whether the employer's owners became fiduciaries by exercising sufficient authority or control respecting use and disposition of those assets.  Both owners, Donald and John Terwilliger,  were signatories on the account and signed checks on that account.  But while Donald had a role in determining which bills to pay and when, John's role was primarily a "production" person, with no responsibility for determining which bills would be paid or in what order.  Hence the court determined that Donald was a fiduciary with respect to those assets, while John was not.  Id. at 40.

See also, Yeseta v. Baima, 837 F.2d 380 (9th Cir. 1988)(employee, in charge of plan administration, exercised sufficient control and was therefore a fiduciary when he withdrew plan assets at company direction and used assets to pay corporate expenses).  Compare, Local Union 2134 v. Powhatan Fuel Inc., 828 F.2d 710 (11th Cir. 1098)(President of a troubled corporation, who chose to spend corporate assets to pay salaries and corporate debt rather than contributions to ERISA plan, acted in role as president, and not as ERISA-plan fiduciary).

In <u>Chicago District Council of Carpenters Pension Fund v. Angulo</u>, 150 F. Supp. 2d 976, 978 (N.D. Ill. 2001), the Court first held that fixed obligations, such as receivables, were plan assets once wages were paid (and implicitly, without regard to whether deductions were actually taken from those wages). However, the Court rejected the plan's attempt to "springboard" from inclusion of receivables in assets to a finding that the employer was a fiduciary: "[S]uch a reading is too big a stretch, for it would convert every contributing employer into a plan fiduciary." <u>Id.</u>

Such a reading is only too big a stretch if plan assets are defined to include all amounts due and owing, regardless of whether they have been deducted from wages. By limiting, as this Order does, the scope of "plan assets" to amounts actually deducted by and held by the employer, the scope of fiduciary duty is similarly limited to the handling of those deductions. For that reason, I respectfully disagree with the conclusion of the <u>Angulo</u> Court.

There is no question that Struben exercised control over the amounts deducted from S&S. She made the decision to stop paying the Funds. She made the decision to liquidate and pay other creditors and herself. She made the decision to pay creditors and herself before the dispute with the Funds was resolved. This is the type of management or control over plan assets that is exercised by a functional fiduciary.

**CONCLUSION**

Struben's decisions to pay creditors and to take distributions for herself and her son certainly constituted control over the management and disposition of the plan assets identified above. Struben has failed to meet her burden of showing that she was not, as a matter of law, a fiduciary with respect to those amounts. Accordingly, her motion for summary judgment [#53] as to Count II is DENIED.

ENTER this 18th day of October, 2007.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE